IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) | COMPLAINT |
| vs. | ) ) | JURY TRIAL DEMANDED |
| CAMBER CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 (ADA), as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability.  This is also an action under the Age Discrimination in Employment Act of 1967 (ADEA), as amended, to correct unlawful employment practices on the basis of age. In this action, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission") seeks to provide appropriate relief to Charging Party Ashok Pai, who was employed by Defendant Camber Corporation ("Defendant" or "Camber") as a Software Systems Architect at the United States Department of Justice Executive Office of Immigration Review (EOIR).  As alleged with greater particularity below in Count I, EEOC alleges that Defendant violated the ADA when it failed to transfer Charging Party and fired him.  Further, as alleged with greater particularity in Count II, EEOC alleges that Defendant violated the ADEA.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA,

42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. This action is also authorized and instituted pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b), which incorporates by reference Sections 16(c) and Section 17 of the Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. §§ 216(c) and §217.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Virginia.

## PARTIES

4. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and the ADEA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), and by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

5. At all relevant times, Defendant Camber Corporation has continuously been doing business in the State of Virginia and the Cities of Fairfax and Falls Church.

6. At all relevant times, Defendant has had at least 15 employees.

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

8. At all relevant times, Defendant has been a covered entity under Section 101(2) of

the ADA, 42 U.S.C. § 12111(2).

9. At all relevant times, Defendant has had at least 20 employees.

10. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

11. More than 30 days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of the ADA and ADEA.

12. On June 14, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

13. The Letter of Determination issued to Defendant on June 14, 2017 also states that the Commission found reasonable cause to believe that the ADEA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

14. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

15. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

16.     On July 13, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

17.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

## COUNT I/ADA VIOLATIONS

18.     The Commission reasserts, as if fully set forth herein, the allegations in paragraphs 1, 3-8, 11-12, and 14-17.

19.     On or about September 8, 2014, and continuing thereafter, Defendant engaged in unlawful employment practices in violation of Title I of the ADA, 42 U.S.C. § 12112(a) and (b), by discriminating against Charging Party Ashok Pai on the basis of disability, as defined by § 12112(a) and (b)(4), as follows.

(a)     Charging Party Ashok Pai has a son who is disabled. Charging Party's son sustained catastrophic injuries in a car accident as a child and, as a result, has been disabled for more than 25 years.

(b)     In 2012, Charging Party began working for Avaya Government Solutions, a subsidiary of Avaya, Inc., as a Software Systems Architect.

(c)     During his employment with Avaya, Charging Party was assigned to service Avaya's contract with the United States Department of Justice at the government's Executive Office for Immigration Review (EOIR) located in Falls Church, Virginia.

(d)     On March 31, 2014, Camber acquired the IT Business Consulting Services of Avaya Government Solutions. As part of that transaction, several Avaya employees, including Charging Party, became employees of Camber.

(e) Following Camber's acquisition of Avaya Government Solutions, Charging Party retained his job title, salary, and benefits, and continued working at EOIR.

(f) During his employment with Avaya and Camber, Charging Party lived in Arlington, Virginia, and he also maintained a home in Southern California where his wife and disabled son lived. Charging Party traveled back and forth from Virginia to California, at his own expense, to meet his employment obligations at EOIR to visit his son and provide care for him.

(g) During the summer months of 2014, Charging Party told his supervisor, Atif Khalil, that the reason he had been traveling back and forth from Virginia to California was to visit and care for his disabled son. During this period, Charging Party periodically requested permission to schedule the use of his leave according to his son's needs.

(h) Atif Khalil was a member of Camber's Management team functioned as a supervisor to Charging Party.

(i) On or about August 29, 2014, Charging Party took six days of approved leave to travel to California and visit his son, whose medical conditioned had worsened.

(j) When Charging Party returned to Camber from leave in early September 2014, he asked Camber's Human Resources Department for permission to take additional leave, under the Family Medical Leave Act (FMLA), due to his son's medical condition.

(k) On September 8, 2014 at approximately 9:30 am, Charging Party sent Khalil an email indicating that he wanted to explore the possibilities of a transfer within Camber. In the email, Charging Party advised Khalil that his inquiries about a transfer were necessitated by his disabled son's medical condition.

(l) After sending the email to Khalil on September 8th, Charging Party met with Khalil that morning to discuss it.

(m) During the meeting on September 8th, Charging Party told Khalil that he was exploring the possibility of a transfer within Camber because of his son's disability. Charging Party also told Khalil that he was seeking a period of FMLA leave to care for his son, and that he was exploring a transfer to California or one of the Western States in the U.S. so that he could work for Camber in a location that was nearer to his where his son lived.

(n) During the meeting on September 8th, Khalil directed Charging Party to send Khalil a second email and, this time, directed Charging Party to state that he required a transfer no later than October 31, 2014.

(o) After the meeting on September 8th, Charging Party complied and sent Khalil a second email that morning, at approximately 10:30 am, using the language and time table that Khalil directed him to use.

(p) In the second email Charging Party sent to Khalil on September 8th, Charging Party again said that he was exploring the possibility of a transfer within Camber. The email states in part: "As discussed, my family medical issues have become increasingly severe, precluding our planned relocation to the DC metro area, and I am compelled to explore the possibility of a transfer to the Southern California area, or to any of the western states."

(q)     On the morning of September 8th, immediately after he learned that Charging Party was exploring a transfer due to his disabled son's medical condition, Khalil conferred with Camber's Human Resources Department in an effort to "displace" Charging Party from his employment with Camber and immediately create a job posting for his position and hire someone to replace him.

(r)     Shortly before noon on September 8th, just hours after Charging Party had conferred with Camber's Human Resources Department and Camber Management about his disabled son's medical condition Camber classified Charging Party as having "resigned" effective October 31, 2014 and began processing his termination papers.

(s)     After he learned that Charging Party was exploring a transfer due to his disabled son's medical condition, Khalil conferred with Camber's government customer, EOIR, in an effort to persuade EOIR to remove Charging Party from his position and replace him.

(t)     Khalil told EOIR that Charging Party had voluntarily resigned from his employment with Camber.

(u)     Khalil told EOIR that it should agree to change the job requirements of Charging Party's position from that of a senior level position to a mid-level position, and that it should agree with Camber's proposal to hire someone to replace Charging Party.

(v)     Unaware that Camber had begun processing his termination on September 8th, Charging Party continued to confer with Camber's Human Resources Department.

(w)     On September 10, 2014, Camber granted Charging Party's request for FMLA leave, to begin on September 10, 2014.

(x)     On September 18, 2014, Charging Party received termination papers from Camber.  Charging Party immediately conferred with Camber and discovered that Camber had erroneously processed him as having "resigned."

(y)     Charging Party communicated to Camber that he had not resigned, and that he only sought a transfer within Camber necessitated by his disabled son's medical condition.

(z)     On September 18, 2014, Charging Party sent Khalil an email advising him that he had not resigned his employment, and that he only requested a transfer within Camber to be nearer to the Southern California region.  In the email, Charging Party referenced his FMLA leave period which would extend beyond October 31, 2014 and he sought assistance in finding a transfer within Camber.

(aa)    On September 19, 2014, following Charging Party's conferral with Camber Human Resources, Camber reversed Charging Party's termination explaining that, "we now understand that you did not intend to resign your current role effective Oct. 31 unless you found another role within Camber prior to that date."

(bb)    On September 19, 2014, Camber granted Charging Party's FMLA leave again and, this time, indicated that it would begin on September 24, 2014.

(cc)    On September 26, 2014, Khalil and Camber's Human Resources Department conferred about the fact that Charging Party had not resigned, and discussed what other grounds Camber could use to terminate Charging Party's employment.

(dd) On or about September 26, 2014, Khalil and Camber's Human Resources Department agreed that they would try to terminate Charging Party's employment for reasons that could be attributed to the government customer instead of Camber, that is, 1) by establishing that Camber's government customer, EOIR, asked Camber to change Charging Party's position such that he was no longer be qualified for the job, and/or 2) by establishing that EOIR specifically wanted Camber to remove Charging Party from his position.

(ee) Consistent with his discussions with Camber's Human Resources Department on September 26, 2014, Khalil created a job requisition for Charging Party's position in which the job description was changed from that of a senior-level developer to a mid-level developer position.

(ff) After Camber changed Charging Party's job description from that of a senior-level to a mid-level position, Charging Party remained qualified for the job.

(gg) Following his meeting with Camber's Human Resources Department, Khalil continued to confer with EOIR to persuade the customer to agree that Camber should seek a replacement for Charging Party.

(hh) EOIR did not ask Camber to remove Charging Party from his position at EOIR, nor did it oppose Charging Party returning to work at EOIR.

(ii)    Camber's Management, Human Resources Department, and at least one Camber executive at the Vice President level, conferred about whether the company could effectively blame its customer for Charging Party's termination either by claiming that he was no longer qualified because the government customer changed his job requirements, or because the government customer specifically wanted to remove Charging Party from his position.  The emails demonstrate that Camber perceived the risk imposed by its pretextual and unlawful termination of Charging Party's employment, but pursued his termination anyway, believing that Camber could blame the customer for the decision.

(jj)    Camber did not offer Charging Party the opportunity to remain employed with Camber in any capacity, including that of a mid-level developer, and at no time did the company offer Charging Party a transfer.

(kk)    Camber excluded or otherwise denied Charging Party equal jobs or benefits when it failed to transfer him to a position within Camber.

(ll)    On October 17, 2014, Camber terminated Charging Party's employment.

(mm)    In the termination letter issued on October 17, 2014, Camber said that Charging Party's employment was terminated "due to the customer changing the requirements for your position."

(nn)    The reason for Charging Party's termination set forth in Camber's October 17, 2014 termination letter is a pretext for unlawful discrimination.

(oo)    Although Camber claimed that it terminated Charging Party because EOIR changed his job requirements from that of a "senior" level developer to a mid-level developer, after Camber used this pretext to justify Charging Party's termination the company reversed itself, and posted and filled the job as a "senior" level developer position.

(pp)    After firing Charging Party on October 17, 2014, Camber continued to assert shifting and pretextual reasons for Charging Party's termination, including that Charging Party resigned on September 8, 2014 – an assertion that Camber had acknowledged was untrue on September 19, 2014.

20.    The effect of the practices complained of in paragraph 19 above has been to deprive Charging Party Ashok Pai of equal employment opportunities and otherwise adversely affect his status as an employee on the basis of disability, in violation of the ADA.

21.    The unlawful employment practices complained of in paragraph 19 above were intentional.

22.    The unlawful employment practices complained of in paragraph 19 above were done with malice or with reckless indifference to the federally protected rights of Charging Party Ashok Pai.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that the Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from: discriminating against employees who are associated with, or have a relationship with, a person with a disability; excluding or otherwise denying equal jobs or benefits to a qualified individual

because of the known disability of an individual with whom the qualified individual is known to have a relationship or association; maintaining a bias against persons who are associated with or have a relationship with a disabled person based the myths, fears, and stereotypes that such persons will take excessive and/or disruptive periods of leave or will otherwise be insufficiently reliable to be eligible for employment opportunities and/or maintain their employment; operating without mechanisms that would deter or eliminate conflicts of interest that occur when managers who have an interest in defending their own prejudicial decision-making interface directly with customers in an effort to create pretextual reasons to justify adverse employment decisions; and creating and sustaining an environment in which human resources personnel, management, and executives collaborate in an effort to create justifications to terminate the employment of persons in protected classes for pretextual reasons and without review by EEO professionals who are trained to identify and incentivized to prevent such discriminatory conduct.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with a disability or those who are associated with, or have a relationship with, a person with a disability, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Charging Party Ashok Pai.

D. Order Defendant to make whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 18, above.

E. Order Defendant to make whole, by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in paragraph 18, above, in amounts to be determined at trial.

F. Order Defendant to pay punitive damages for its malicious and reckless conduct, as described in paragraph 18 above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## COUNT II/ADEA VIOLATIONS

23. The Commission reasserts, as if fully set forth herein, the allegations in paragraphs 2-5, 9-10, 11, 13-17, and 19.

24. On or about September 8, 2014, and continuing thereafter, Defendant engaged in unlawful employment practices in violation of the ADEA, 29 U.S.C. §623, as follows.

(a) On March 31, 2014, when Camber became Charging Party's employer, Charging Party was 64 years old.

(b) Charging Party was qualified for the position he held at Camber and EOIR.

(c) During Charging Party's employment with Camber, as asserted above in paragraph 19, Camber tried to terminate Charging Party based on the false excuse that he "resigned," and then after the company admitted that he had not resigned, worked to create other false excuses to justify his termination that the company hoped could be blamed on its government customer.

(d) To attract a younger worker to replace Charging Party, Camber reclassified his position from that of a senior-level developer to a mid-level developer.

(e) Among the emails exchanged between Camber Management and Camber's Human Resources Department is confirmation that Camber perceived the mid-level developer position to be "a junior level position" that required only 3-5 years of experience.

(f) Although Camber ultimately filled the position as a "senior" level developer position with substantially younger workers, it also posted the position as a "mid-level" developer position in an effort to recruit younger applicants.

(g) In December 2015, Camber hired a person under the age of 40 to replace Charging Party. However, that person could not begin working at EOIR because he was unable to obtain sufficient security clearance after an extended period.

(h) Subsequently, Camber replaced Charging Party with a person who is more than 20 years younger.

(i) During the relevant period, Camber granted a transfer to a Camber employee in Virginia who was 30+ years younger than Charging Party. By contrast, Camber processed Charging Party's transfer request as a "resignation" and when Charging Party told Camber that he had not resigned, the company created pretextual reasons to justify his termination and fired him.

25. The effect of the practices complained of in paragraphs 23 and 24 above has been to deprive Charging Party Ashok Pai of equal employment opportunities and otherwise adversely affect his status as an employee on the basis of his age, in violation of the ADEA.

26. The unlawful employment practices complained of in paragraphs 23 and 24 above are and were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that the Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from: discriminating against employees because of age; excluding or otherwise denying equal jobs or benefits to persons because of age; maintaining a bias against persons because of age; operating without mechanisms that would deter or eliminate conflicts of interest that occur when managers who have an interest in defending their own prejudicial decision-making interface directly with customers in an effort to create pretextual reasons to justify adverse employment decisions; and creating and sustaining an environment in which human resources personnel, management, and executives collaborate in an effort to create justifications to terminate the employment of persons in protected classes for pretextual reasons and without review by EEO professionals who are trained to identify and incentivized to prevent such discriminatory conduct.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals 40 years of age and older, and which eradicate the effects of its past and present unlawful employment practices.

C. Grant a judgment requiring Defendant to pay appropriate back wages in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to Charging Party Ashok Pai.

D. Order Defendant to make whole all individuals adversely affected by the unlawful practices described above, by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to reinstatement and front-pay.

E. Grant such further relief as the Court deems necessary and proper in the public interest.

F. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Washington, D.C.

JAMES L. LEE
Acting General Counsel

GWENDOLYN Y. REAMS
Associate General Counsel

DEBRA LAWRENCE
Regional Attorney, Philadelphia District Office

KATE NORTHRUP
Supervisory Trial Attorney, Baltimore Field Office
kate.northrup@eeoc.gov

_____
DAVID STAUDT
Va. Bar ID # 47442
Trial Attorney, Baltimore Field Office
Attorney for Plaintiff EEOC
U.S. EQUAL EMPLOYMENT OPPORTUNITY
  COMMISSION
Baltimore Field Office
10 S. Howard St., 3rd Floor
Baltimore, MD 21201
Tel. (410) 209-2249
Fax (410) 962-4270
david.staudt@eeoc.gov