# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| United States Equal Employment Opportunity Commission,<br><br>                              Plaintiff,<br><br>vs.<br><br>Camber Corporation,<br><br>                              Defendant. | Case No.  1:17cv1084 (AJT/JFA)<br><br><br>**Declaration Certifying the Authenticity of Records** |

I,  ___ALAN W. ANDERSON___ , declare:

*(Custodian's Name – Please Print)*

I am a Custodian of Records for the United States Equal Employment Opportunity Commission (EEOC) regarding the charge file for EEOC Charge No. 570-2015-01845, Ashok Pai v. Camber Corporation.

I am duly authorized and qualified to certify the authenticity of the attached charge file documents listed below:

a.      Position Statement of Camber Corporation in Response to Charge No. 570-2015-01845, dated October 1, 2015, EEOC000011-000017 (Attachment 1)

b.      Letter, Camber Corporation to EEOC dated January 31, 2017, EEEO000227-236 (Attachment 2).

c.      These records are correct copies of original records maintained by EEOC in the charge file for EEOC Charge No. 570-2015-01845.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __8TH__ day of __m Ay__, 2018.

_____
Signature *(Custodian of Records)*

Printed Name: Alan Anderson

Title: Deputy Director, EEOC Washington Field Office

# ATTACHMENT 1

 

## POSITION STATEMENT OF CAMBER CORPORATION
## IN RESPONSE TO CHARGE NO. 570-2015-01845

---

**NOTICE**

Camber Corporation ("Camber") is still conducting an investigation into the allegations made the subject of the Charge of Discrimination; consequently, although an effort has been made to obtain full and correct information, additional information may later come to light that adds to or clarifies the explanation contained herein.

Camber's participation in this proceeding is without waiver of any procedural, jurisdictional, or substantive defenses to the Charge or to matters made the subject of the Charge.

---

### A. Summary of Camber's Response

The following is the Position Statement of Camber Corporation ("Camber") regarding the above-referenced Charge of Discrimination filed by Ashok Pai on or about August 5, 2015. The Charge alleges Camber discriminated against Mr. Pai on the basis of his national origin (Asian Indian) in violation of Title VII of the Civil Rights Act of 1964, as amended; his age in violation of the Age Discrimination in Employment Act of 1967; and his child's disability in violation of the Americans with Disabilities Act.[1]

Mr. Pai was formerly employed by Camber as a Software Systems Architect at an office of the U.S. Department of Justice in Falls Church, Virginia. Camber denies that it discriminated against Mr. Pai on the basis of his national origin, age, or any disability of

---

[1] Mr. Pai also appears to assert a claim under the Family Medical Leave Act ("FMLA"). As you are aware, the EEOC does not investigate alleged violations of FMLA. See 29 U.S.C. § 2617(a); 29 C.F.R. § 825.400 (employees may file a complaint with the Secretary of Labor or file a private lawsuit to enforce provisions of FMLA); see also Guadalupe v. City of Los Angeles, 2008 WL 5179034, *3 (C.D. Cal. Dec. 9, 2008) ("The FMLA is not enforced by the EEOC . . . ."). Accordingly, those allegations are not within the jurisdiction of the EEOC.

EEOC000011



his child.  As demonstrated below, Mr. Pai's separation from Camber actually followed his **resignation** on September 8, 2014, for the stated purpose of moving to California to be closer to his family. After receiving Mr. Pai's letter of resignation, Camber briefed its government customer on the anticipated changes and mutually worked with the customer to formulate a plan to Mr. Pai with an employee possessing more experience and skill in a particular computer programming platform, ".NET." Ultimately, Mr. Pai changed his mind about resigning, but by that point Camber had already communicated this plan to its customer, which favored the idea of a Software Systems Architect with more capabilities in .NET software programming. The U.S. government reinforced its desire to replace Mr. Pai following his effort to rescind his resignation, and Camber was, therefore, not in a position to honor Mr. Pai's request to rescind his resignation.

In summary, Mr. Pai's separation was prompted by Mr. Pai's own voluntary resignation and supported by the Government's request to replace him with an employee with additional skills and experience. The separation was in no way based on Mr. Pai's national origin, age, or disabled child.

## B.  Camber's Factual Response to the Charge

Camber Corporation is a nationwide defense contractor headquartered in Huntsville, Alabama.  From its founding in 1990, Camber has grown to over 30 Camber offices positioned to provide responsive support to its customers across the United States. Camber provides engineering and technical services, cyber operations technology, mission critical support services, and advanced training solutions to U.S. federal agencies and affiliates.  Camber support aligns with the operational interests of every Joint combatant command; more than 150 Army, Air Force, and Navy programs; National Guard headquarters in every state and territory; and more than 25 North Atlantic Treaty Organization (NATO) or coalition countries in Europe, Asia, and Africa.

Mr. Pai was formerly employed by Avaya, Inc., as a contractor to the U.S. Department of Justice's Executive Office for Immigration Review ("EOIR"), headquartered in Falls Church, Virginia. In March 2014, Camber acquired the IT Business Consulting Services of Avaya Government Solutions, a subsidiary of Avaya. As part of that transaction, several Avaya employees, including Mr. Pai, became employees of Camber. Mr. Pai remained employed at the Falls Church location and retained his job title, salary, and benefits. Attached as **Exhibit A** is a true and correct copy of the notification letter from Camber to Mr. Pai regarding the Avaya acquisition. From March 2014 to September 2014, Mr. Pai continued to work for Camber.

2

EEOC000012

10/01/2015 THU 17:18  FAX  ☑005/032

Mr. Pai worked together with a team of approximately 50 Camber employees on-site at the Government's EOIR Office in Falls Church, Virginia, providing software support to the Government. Mr. Pai's work/life situation was somewhat unique, however. Although he worked in Falls Church, Virginia, and had worked there since well before Camber acquired Avaya and took over the EOIR contract, his wife and disabled child resided in southern California. In casual conversations going back at least to the summer of 2014, Mr. Pai mentioned to his supervisor, Atif Khalil, that he had been traveling back and forth between California and Virginia in order to visit with and care for his family members. While the Government customer required on-site support from Camber and had a policy preventing regular telework, Camber did work with Mr. Pai to schedule vacation and leave usage around his family's needs; indeed, Camber on several occasions permitted leave even when Mr. Pai had a negative leave balance.

Despite Camber's efforts to work with Mr. Pai to schedule times to visit his family,[2] he evidently decided in early September 2014 that he really needed to relocate and live with his family in southern California, rather than working on the other side of the continent and traveling home on weekends.

Accordingly, on September 8, 2014, Mr. Pai sent two emails to his immediate supervisor, Atif Khalil. In the first email, Mr. Pai stated he wanted to explore the possibility of "transfer within Camber" so that he could be nearer to his family. In that first email, Mr. Pai stated the request was not urgent. (**Exhibit B**). This was not a new request. Indeed, Mr. Pai had previously spoken to both a Camber in-house recruiter and to Mr. Khalil about opportunities on the west coast, but had been unable to find anything. Approximately an hour later, however, Mr. Pai followed up on this email with a much more concrete decision. In the second email (**Exhibit C**), Mr. Pai stated that his "family medical issues have become increasingly severe," and therefore, he was "compelled" to "transition out" of his current project so he could move to Southern California to be with his family. His second email indicated very clearly that his last day would be October 31, 2014. While his email did also mention that he would like to explore "the possibility of a transfer" to an area closer to his family, there was no doubt he was resigning the position he held.

Mr. Khalil – who was very familiar with Mr. Pai's personal situation, his efforts to be closer to his family, and his previous inability to find anything internal at Camber closer to home – reasonably interpreted Mr. Pai's second email as a resignation letter. In response, Mr. Khalil forwarded Mr. Pai's email to Lisa Thompson, a Camber Human

---

[1] Indeed, Camber ultimately provided Mr. Pai with intermittent FMLA leave as well when he requested it in order to assist him in visiting his family.

3

EEOC000013

 

Resources generalist, to verify whether Camber could treat Mr. Pai's email as a resignation letter or if a more formal resignation letter was needed. Mr. Khalil explained that Mr. Pai wanted to move back to California in order to be nearer to his family and, as a result, was unable to continue working at the EOIR in Falls Church, Virginia. (See **Exhibit D**).[3] Once Ms. Thompson received Mr. Pai's email, she agreed it was sufficient for resignation purposes and began processing the paperwork for his termination.

The very next day, September 9, 2014, Mr. Khalil began moving forward with discussing the need for a replacement. In fact, Mr. Khalil included the resignation of Ashok Pai as a bullet point in his September 9 DCIO-PM Weekly Briefing to the government customer. (**EXHIBIT E**). He noted in the briefing that Mr. Pai's last day would be October 31, 2014. He also noted in that briefing that there would be a need to recruit and hire someone with .NET software development capabilities to backfill for Mr. Pai.

Following the presentation, Mr. Khalil continued his discussion of the matter of Mr. Pai's departure with Camber's Government liason (referred to as the "COTR") Howard Myatt. Mr. Khalil and Mr. Myatt discussed the benefit of filling the void left by Mr. Pai's departure with a new employee who would have greater knowledge and experience in developing custom software applications on the .NET framework. Mr. Pai was experienced with Sharepoint, a document-management software system, which the EOIR used extensively. In 2012, when Sharepoint was first implemented at the EOIR, it was thought Sharepoint would solve several logistical and organizational problems within the EOIR office. However, the government customer later determined that Sharepoint was not entirely well-suited to the needs of the EOIR. As such, the government determined that custom software solutions based on the .NET framework were likely to be the future for the EOIR. To facilitate the development of custom software solutions, Camber needed to both maintain Sharepoint expertise and to focus on acquiring employees with software programming knowledge and training, particularly those with .NET experience.

Although Mr. Pai was knowledgeable using Sharepoint, he was less knowledgeable and experienced in actually developing software programs on the .NET

---

[3]  As noted above, the Government did not permit Camber personnel employed at the Falls Church, Virginia EOIR Office to engage in regular telework. Camber's Statement of Work with the Government specifically provides for on-site support, and the Government COTR consistently explained that telework is not a long-term option. Mr. Pai would have been well aware of that, which is probably why he never requested to relocate and work from home on a regular basis.

EEOC000014

10/01/2015 THU 17:18 FAX  2007/032



framework. He had been tasked with developing and writing code by Camber and had not performed particularly well in this area. Despite these deficiencies, however, Camber continued to employ Mr. Pai until, entirely unprompted, he proffered his resignation on September 8, 2014.

As these internal discussions concerning Mr. Pai's replacement were ongoing, Mr. Pai evidently changed his mind about resigning. On September 18, 2014, roughly ten days **after** sending his resignation email, Mr. Pai sent another email to Mr. Khalil stating that it had never been his intention to resign. Attached as **Exhibit F** is a true and correct copy of the third email from Mr. Pai to Mr. Khalil. Whether Mr. Pai changed his mind or had simply miscommunicated his intent to resign, the fact remained that Camber understood Mr. Pai's September 8, 2014 email to effect a resignation. In reliance upon this, Camber had communicated to its government customer that it would be better served with a replacement for Mr. Pai with a different skill set.

Mr. Pai's change of heart left Camber in a difficult position. If Camber decided to allow Mr. Pai to rescind his resignation and remain on the team, it risked losing credibility with, and the support of, its government customer. Camber ultimately determined that it could not disappoint its government customer by retaining Mr. Pai after it had explained the need to replace him with someone possessing a different skill set. This decision was reinforced by Mr. Myatt himself, who, after being informed of the fact that Mr. Pai was attempting to reconsider his resignation, expressly instructed on behalf of the government customer that Mr. Pai be removed from the team. Attached as **Exhibit G** is a true and correct copy of an email from Mr. Myatt dated October 1, 2014 directing Mr. Khalil to proceed with the plan to replace Mr. Pai.

In accordance with the previous plan and the government's explicit request, Camber notified Mr. Pai on October 17, 2014, that he was terminated, effective October 31, 2014. (See **Exhibit H**). It is important to note that the October 31 termination date was the same termination date Mr. Pai originally requested in his resignation email. (See **Exhibit C**). All in all, Mr. Pai's resignation email – whether truly inadvertent or intentional   was taken seriously by Camber. Camber was entitled to do as it did and rely on the resignation it received.

The law supports Camber's actions. There is no requirement that an employer permit an employee who has resigned to rescind his resignation. Pownall v. City of Perrysburg, 63 F. App'x 819, 823 (6th Cir. 2003) ("once [plaintiff]'s voluntary resignation took effect, she had no right to revoke it, and the [defendant] had no duty to reinstate her."); Smith v. DeTar Hosp., LLC, 2012 WL 2871673, *13 (S.D. Tex. July 11, 2012) ("Moreover, even assuming [plaintiff] had changed her mind and later wished to

5

rescind her resignation, courts have repeatedly held that an employer has no duty to reinstate an employee once she voluntarily resigns.").

Camber ultimately replaced Mr. Pai with Peter Chu. Prior to finding Mr. Pai's replacement, Camber created and released a requisition for the vacant position. (See **Exhibit I**). Camber changed the job title from Software Systems Architect to Senior .NET developer; changed the focus from Sharepoint experience to .NET software development experience; lowered the salary (from $175,000 to $117,000); and lowered the overall experience needed (from 10 years to 3-5 years). This allowed Camber to bring in a lower cost employee with less subject matter expertise in Sharepoint, but more experience and knowledge in software development on the .NET framework. At the time of his hire, Mr. Chu had over 20 years of experience as a software developer and at least 10 years of that experience involved the .NET framework. It was Mr. Chu's particular experience as a .NET developer that made him an exceptional fit for the vacant position at EOIR.

Notably, Mr. Chu himself is both Asian and over 40 years old – raising serious doubts as to Mr. Pai's national origin and age discrimination claims. What is more, the entire .NET team that Mr. Pai worked with is exceedingly diverse. Of the individuals who supervised Mr. Pai's work, one is Asian, another is Indian, and a third is Pakistani. The majority of the .NET team itself is Asian (hailing from China, India, Vietnam, Pakistan, etc.). There is certainly no discrimination on this team against those from this area of the world. Similarly, many if not most of those serving on the team are over 40 years old.

There is also no merit to Mr. Pai's disability discrimination claim. As demonstrated above, Mr. Pai was not terminated because of his child's disability. Rather, Mr. Pai's relationship with Camber ended because of his resignation email, which put into motion a series of events that made rescinding the resignation impractical. Mr. Pai's allegations to the contrary lack any factual support. He has not cited any evidence that Camber had any discriminatory animus toward him for having a disabled child, something that is difficult to take seriously given that Camber actually permitted Mr. Pai to have significant time off throughout the summer of 2014 to care for his child, even when he had no available leave time.

Finally, there is nothing at all in Mr. Pai's EEOC charge to support the bare allegation that he was subjected to harassment while at Camber. Without some factual detail as to the allegation that he was harassed, Camber is not even able to respond to this claim. Needless to say, however, Camber was not made aware of any alleged harassment at any time. Had it been made aware of harassment, it has an effective anti-harassment

EEOC000016



policy and Human Resources employees who are trained to investigate such allegations and take prompt remedial action.  Camber's HR staff was given no such opportunity because Mr. Pai never made any complaints of harassment.

## C.  Conclusion

Camber respectfully submits that there is no basis for Mr. Pai's charge. Camber therefore urges the EEOC to issue a "no cause" finding in this case.

7

# ATTACHMENT 2

LanierFord.com

# LANIER FORD

Lanier Ford Shaver & Payne P.C.
**Attorneys at Law**

2101 West Clinton Ave., Suite 102
Huntsville, Alabama 35805

*Mailing Address:*
*P.O. Box 2087 • Huntsville, Alabama 35804*
256-535-1100 Office

**David J. Canupp**
Attorney at Law
DJC@lanierford.com

January 31, 2017

VIA EMAIL TRANSMISSION
louis.francavilla@eeoc.gov

Louis R. Francavilla
Equal Employment Opportunity Commission
Washington Field Office
131 M Street, N.E., 4th Floor
Washington, DC 20507

|     | Re: | Charge Number: | 570-2015-0185 |
| --- | --- | --- | --- |
|     |     | Charging Party: | Ashok Pai |
|     |     | Respondent: | Camber Corporation |

Dear Investigator Francavilla:

I am in receipt of your email, dated December 23, 2016, requesting additional documents and information from my client, Camber Corporation, in connection with the above-referenced EEOC charge. For clarity and convenience, I have listed each of your requests below with Camber's corresponding response. Also attached to this correspondence are documents responsive to your requests, which are Bates-labeled CAMBER 000099 through CAMBER 000226, inclusive, for identification purposes.

> **1. Identify all persons who were hired to fill the position that was held by Ashok Pai (or the position that was left vacant by Ashok Pai's alleged resignation), or who were assigned to fill that position or fulfill its job duties on a temporary or permanent basis, at any time from September 8, 2014 up to the date of your response to this Request.**

As previously stated in Camber's position statement and response to the EEOC's second request for information, dated April 8, 2016, the position left vacant by Ashok Pai's resignation was converted to a Senior .NET Developer position and filled by Peter Chu. No one was hired or assigned to fill that position or perform its job duties until Mr. Chu was

Louis R. Francavilla
Equal Employment Opportunity Commission
January 31, 2017
Page 2

---

hired on April 20, 2015.[1] Mr. Chu later resigned the position on November 13, 2015, and no one has been assigned to fill that position. Instead of filling the position vacated by Mr. Chu, Camber's government customer elected to downsize the team, thus eliminating the position.

It also bears reemphasizing that the position filled by Mr. Chu was not the same as the one vacated by Mr. Pai. Because Mr. Pai's position was converted to a Senior .NET Developer position, it had different duties, responsibilities, and pay than the Software Systems Architect position held by Mr. Pai.

> **a. For each person identified in response to Question 1, provide: the date of birth (day, month, and year) for each person; each person's last known address, e-mail address, and telephone number; the date when each person was hired or assigned to fill the position; the dates during which each person held or performed the position; and, if any person identified is no longer employed by Respondent, or now holds a different position, provide his or her last date of employment or new job title, and reason for separation if applicable.**

In response to this request, Camber directs your attention to the updated list of current and former employees who currently work or have worked on the contract to which Mr. Pai was assigned, which is Bates-labeled CAMBER 000099 for identification. Mr. Chu's date of birth is ▓▓▓▓▓▓▓, 1970, and he was 45 years old at the time he was hired by Camber as a Senior .NET Developer. His last known contact information is:

3900 Lincolnshire Street
Annandale, Virginia 22003
(571) 201-9262

Mr. Chu's start date was April 20, 2015, and he resigned his position with Camber on November 13, 2015 to pursue a better job opportunity elsewhere.

---

[1] Prior to hiring Mr. Chu, Camber extended an offer of employment to Emishaw Dadi for the position of Senior .NET Developer. Mr. Dadi accepted the offer on December 24, 2015, but later decided to not take the position because it was taking too long to get his security clearance approved. As a result, Camber reissued the job requisition for the Senior .NET Developer position on March 23, 2015 and ultimately hired Mr. Chu.

Louis R. Francavilla
Equal Employment Opportunity Commission
January 31, 2017
Page 3

b. For each person identified in response to Question 1, provide the full name of the person/s at Respondent who selected or assigned each person for the position held and when that selection or assignment decision was made.

Atif Khalil selected Mr. Chu for the Senior .Net Developer position on or about March 30, 2015.

c. For each person identified in response to Question 1, provide the complete personnel file and, if not included in the personnel file, also provide each person's application, inquiry, and/or resume that was submitted in connection with any inquiry for employment or assignment, along with any other written materials which were submitted to or obtained by Respondent in connection with the selection of that person for employment with Respondent or the assignment or selection of that person for any particular position, including any position left vacant by Ashok Pai.

In response to this request, Camber directs your attention to Mr. Chu's application, resume, and offer letters, which are Bates-labeled as CAMBER 000100 through CAMBER 000117, inclusive, for identification purposes.

2. In a letter to the Commission dated April 8, 2016, Respondent asserted that the company filled the position left vacant by Ashok Pai's alleged resignation on April 20, 2015. Who filled that position, or performed the job duties associated with that position, between the dates of Ashok Pai's alleged resignation on September 8, 2014 and April 20, 2015 when Respondent asserts that the position was filled? For each such person, provide the information sought in Question 1(a) – (c).

Camber did not fill the position vacated by Mr. Pai's resignation until Mr. Chu was hired on April 20, 2015.

3. In previous correspondence with the Commission, Respondent asserted that an individual named Peter Chu was hired to fill the position left vacant by Ashok Pai. Provide the following information regarding Peter Chu: (a) his date of birth (day, month, and year) and last known address, e-mail address, and telephone number; (b) all positions, functions, and job titles held by Peter Chu during his employment with Respondent, and when each position was held; (c)

Louis R. Francavilla
Equal Employment Opportunity Commission
January 31, 2017
Page 4

the date when Peter Chu was hired to fill the position left vacant by Ashok Pai,
or was assigned to fill that position on a temporary or permanent basis, and the
dates during which he held that position; (d) the person who selected Peter Chu
for the position left vacant by Ashok Pai and the date that selection as made;
and (e) if Peter Chu now holds a different position, provide a description of the
position he currently holds and explain why he was removed or transferred
from, or otherwise vacated, the position left vacant by Ashok Pai.

In response to this request, Camber directs your attention to its previous responses
to request #1.

**4. Produce the complete personnel file of Peter Chu and, if not included in his
personnel file, also provide Peter Chu's application, inquiry, and/or resume that
was submitted in connection with any inquiry or application for any position,
along with any other written materials which were submitted to or obtained by
Respondent in connection with its decision to select Peter Chu to temporarily
or permanently fill the position left vacant by Ashok Pai.**

Because Mr. Chu's personnel file contains irrelevant and confidential information
(like tax and financial information), Camber objects to its production. However, Camber
has produced a number of relevant documents in response to this request. In particular,
Camber directs your attention to Mr. Chu's application, resume, and offer letters, which are
Bates-labeled as CAMBER 000100 through CAMBER 000117, inclusive, for identification
purposes..

**5. Either before or after Peter Chu filled the position left vacant by Ashok Pai,
did Respondent hire, select, or assign any other person to fill that position? If
so, provide all information that is requested in Questions 1(a)–(c) for each such
person.**

As discussed above, Camber extended an offer of employment to Mr. Dadi for the
position of Senior .NET Developer, which he accepted on December 24, 2015. Mr. Dadi
later decided to not take the position because his security clearance was taking too long to
be approved. As a result, Camber reissued the job requisition for the Senior .NET Developer
position and hired Mr. Chu.

Camber was interested in hiring Mr. Dadi on Mr. Khalil's recommendation. Mr.
Dadi and Mr. Khalil had worked together previously for Avaya Government Solutions

Louis R. Francavilla
Equal Employment Opportunity Commission
January 31, 2017
Page 5

_____

before Camber acquired Avaya. Mr. Dadi's date of birth is unknown to Camber at this time. His last known contact information is:

> P.O. Box 41623
> Arlington, Virginia 22204
> (202) 670-3234

No other person was selected to fill the Senior .NET Developer position that was converted from the vacancy created by Mr. Pai's resignation. After Mr. Chu's resignation, Camber's government customer opted to eliminate the position altogether.

In further response to this request, Camber directs your attention to Mr. Dadi's resume and employment application, which are Bates-labeled CAMBER 000118 through CAMBER 000132, inclusive, for identification purposes.

**6. In previous correspondence with the Commission, Respondent asserted that Reneika Nance requested a transfer in October 2015 and was granted a transfer on November 8, 2015. Provide the following information regarding Reneika Nance: (a) her date of birth (day, month, and year) and last known address, e-mail address, and telephone number; (b) all positions, functions, and job titles held by Reneika Nance during her employment with Respondent, and when each position was held; (c) all documentation reflecting Reneika Nance's transfer request, correspondence regarding that request, and Respondent's decision to grant that request; (d) the complete personnel file of Reneika Nance, including all resumes/applications/inquiries submitted for any position, including any transfer; and (e) a complete job description for the position to which Reneika Nance was transferred on November 8, 2015.**

Reneika Nance was hired by Camber as a Technical Support Specialist on May 12, 2014. On or about November 8, 2015, Ms. Nance was transferred to Norfolk, Virginia to the position of Junior Instructional Developer/Data Entry on a newly-awarded contract. On April 19, 2016, Ms. Nance was promoted to Work Force Analyst.

Ms. Nance's date of birth is ████, 1987. At the time she requested and received a transfer, Ms. Nance was 28 years old. Because Ms. Nance is a current Camber employee, Camber requests that any contact with her be arranged through Camber. If you would like to interview Ms. Nance, Camber will make arrangements for an interview to be conducted in the presence of its legal counsel.

Louis R. Francavilla
Equal Employment Opportunity Commission
January 31, 2017
Page 6

In further response to this request, Camber directs your attention to Ms. Nance's applications, resume, job requisition 13484, and other documents related to Ms. Nance's transfer, which are Bates-labeled CAMBER 000133 through CAMBER 000178, inclusive, for identification purposes.

**7. In previous correspondence with the Commission, Respondent produced a document that is Bates-labeled CAMBER 000084 and which Respondent asserted identifies all persons who worked on the same contract as Ashok Pai up through the date of Respondent's production of the document on March 10, 2016. In response to this Request, provide an updated employee list which identifies all persons who have worked on the same contract up through the present date, and include the same information for all such persons as is already provided in CAMBER 000084 (Emp ID, Employee Name, Status, Hire Date, Term Date, Gender, Type, Description, Birth Date, Current Salary, Reason for Term, Address, Address 2, City, State, Zip, Phone), including any updated information for those who were identified in the version of CAMBER 00084 that was produced on March 10, 2016.**

In response to this request, Camber directs your attention to an updated employee list (CAMBER 000099).

**8. Regarding those identified in CAMBER 000084, identify all persons who were hired or assigned to fill or perform the position that was vacated by Ashok Pai at any time up through the present.**

In reviewing the employee list previously produced as CAMBER 000084, it was discovered that Mr. Chu was inadvertently left off the list. As discussed, Mr. Chu was the only person hired to fill the position of Senior .NET Developer which was converted from the position left vacant by Mr. Pai's resignation. This error has been corrected, and Mr. Chu has been included on the updated employee list.

**9. In previous correspondence to the Commission dated October 1, 2015, Respondent asserted that it created and released a requisition for the position that had been vacated by Ashok Pai and, in doing so, changed the job title from Software Systems Architect to that of a .NET developer. Please provide the following information regarding that assertion:**

**a. Did Respondent permit Ashok Pai to apply for the vacant position which, according to Exhibit I, was entered as a requisition on 10/20/14?**

Louis R. Francavilla
Equal Employment Opportunity Commission
January 31, 2017
Page 7

---

**If so, set forth all reasons why Ashok Pai was not selected for the position. If not, provide a complete explanation for why Ashok Pai was not permitted to apply, or was not otherwise considered, for the position.**

After Mr. Pai resigned his position on September 8, 2014, Camber and its government customer discussed the benefit of replacing Mr. Pai with someone who had greater .NET software development capabilities. It was agreed that Mr. Pai's position would be changed to a Senior .NET Developer in order to employ someone with more .NET experience, which would be beneficial to the overall success of the contract. In other words, Mr. Pai's resignation was seen as an opportunity to change the position to better accommodate the specific needs of the contract (i.e., .NET software development capabilities). Camber did not prohibit Mr. Pai from applying for the Senior .NET Developer position, but he did not do so.

**b. The requisition attached as Exhibit I indicates that it was added to the system on 10/20/14 and updated on 3/23/15. Why was the requisition updated on 3/23/15 and what updates were made to the requisition or position description at that time?**

Job requisition 11988 was created on October 20, 2015 to fill a vacancy left by Mr. Pai's resignation. The job requisition was updated on March 23, 2015 by (1) changing the status from "On Hold" to "Open" and (2) posting the requisition to Camber's careers website. These changes were made because the candidate who had been originally selected for the position, Mr. Dadi, withdrew from consideration and Camber had to reissue the job requisition in order to find a qualified candidate.

In further response to this request, Camber directs your attention to the October 21, 2014 updated job requisition, the overview of job requisition 11988, and the log history for job requisition 11988, which are Bates-labeled CAMBER 000179 through CAMBER 000190, inclusive, for identification purposes.

**c. The requisition attached as Exhibit I indicates that it was created to replace an individual named Kiran Kalithkar. What positions did Kiran Kalithkar hold during his tenure with Respondent, when did he hold each position, and why did the requisition that Respondent attached as Exhibit I seek to replace Kiran Kalithkar as a .NET developer?**

Kiran Kalithkar held the position of Principal Software Developer with a focus on .NET capabilities from March 31, 2014 until May 15, 2014 when he resigned to pursue a better job opportunity outside Camber. Mr. Kalithkar had significant .NET experience, and

Louis R. Francavilla
Equal Employment Opportunity Commission
January 31, 2017
Page 8

he was replaced by Ahmad Etemadi in August 2014 pursuant to job requisition 11256. For
further response to this request, Camber directs your attention to job requisition 11256 and
Mr. Etemadi's application, which are Bates-labeled CAMBER 000191 through CAMBER
000201, inclusive, for identification purposes.

Job requisition 11256 was then pulled and changed to become job requisition 11988
because Camber wanted to model its Senior .NET Developer position on the position held by
Mr. Kalithkar rather than fill Mr. Pai's former position, which was a Software Systems
Architect with a focus on Sharepoint experience. In essence, job requisition 11256 (replacing
Mr. Kalithkar) was copied and pasted into job requisition 11988 (to replace the position
converted from Mr. Pai's position), which likely explains why Mr. Kalithkar's name is listed
as the person who is being replaced. It is Camber's understanding this is a scrivener's error.
As you will see, the job descriptions, responsibilities, education/experience requirements,
required qualifications, desired qualifications, and security requirements for requisition 11256
and 11988 are exactly the same.

> **d. Regarding the requisition attached as Exhibit I, produce a true and
> complete copy of the version of that requisition that was created by
> Respondent on 10/20/14 and before any updates were added on 3/23/15.**

In response to this request, Camber directs your attention to the October 21, 2014
updated job requisition (CAMBER 00179-000182). Camber does not possess a copy of the
job requisition before it was updated on October 21, 2014.

> **10. Produce complete and accurate job descriptions for the following positions
> and, if such positions have been redefined or otherwise changed for the period
> from the date Ashok Pai began working for Respondent to the present, produce
> all previous and updated descriptions, and indicate the time period during
> which each was effective: Senior .NET Developer; Software .NET Developer;
> Senior Software Engineer; Software Systems Architect; Senior Software
> Systems Architect; and any other software or developer positions that have been
> posted/requisitioned or filled at Respondent from March 2014 up through the
> present date.**

In response to this request, Camber directs your attention to the requested job
descriptions, which are Bates-labeled CAMBER 000202 through CAMBER 000225,
inclusive, for identification purposes. As you will see, a number of job descriptions list Avaya
as the employer instead of Camber. This is because those job descriptions were never

Louis R. Francavilla
Equal Employment Opportunity Commission
January 31, 2017
Page 9

reposted after Camber acquired Avaya. As a result, the employer was never updated to reflect Camber as the employer.

> **11. Produce the complete personnel files for the following persons including, if such documents are not found in the personnel files, complete written job descriptions for all positions each person has held with Respondent, any application, inquiry, and/or resume submitted or any inquiry or application for employment by each person, along with any other written materials which were submitted to or obtained by Respondent in connection with any employment decision made about each person, and all other employment-related documents regarding each person's employment with Respondent (note: all Employee IDs are taken from CAMBER 000084): Alan Lane (Employee ID 008461); Saritha Prathipati (Employee ID 009132); Emishaw Dejene (Employee ID 009153); Edward Hearns (Employee ID 009158); Ping Liang (Employee ID 009207); Kapila Malhotra (Employee ID 009261); Lucas York (Employee ID 009267); and Pradip Ghosh (Employee ID 009329).**

While Camber endeavors to cooperate with the EEOC's investigation, and has acted in good faith in responding to the EEOC's numerous requests for additional information, Camber must object to the production of the personnel files requested in this request. There is simply no connection evident between these employees and the claims asserted by Mr. Pai in his charge of discrimination. Accordingly, Camber will not produce these documents unless it can be demonstrated that such fall within the gambit of the EEOC's investigation into Mr. Pai's claims.

> **12. From the date Respondent took over the Avaya operations in March 2014 up to the present, has any current or former employee other than Ashok Pai, or other person who performs work or formerly performed work for or on behalf of Respondent, complained that during the course of his or her employment relationship with Respondent (including the hiring or termination process) he or she has been exposed to age discrimination of any kind, including any conduct whatsoever that allegedly was motivated by a bias against older workers? If so, produce all documents reflecting such complaints and all action taken regarding such complaints, and provide all details regarding such complaints, including the identification of all persons who made such complaints (provide the full name, DOB, last known contact information, current employment status, and reason for separation if applicable), all persons who were alleged to have engaged in age discrimination, and a description of what action, if any was taken in response.**

Louis R. Francavilla
Equal Employment Opportunity Commission
January 31, 2017
Page 10

_____

     Again, Camber must object to this request. To begin, the request is overly broad as Camber has over fifteen hundred employees. As a result, this request goes far beyond the contract on which Mr. Pai worked. Additionally, the EEOC is in the best position to know whether any charges involving age discrimination have been submitted to the EEOC regarding Camber. That being said, at this time, Camber is not aware of any other pending EEOC charge involving age discrimination from any current or former employee who worked on the same contract as Mr. Pai. To the extent the request seeks additional information, Camber objects to same.

     If you have any questions regarding this information or the attached documents, please do not hesitate to contact me.

                                  Sincerely,

                                    David J.  Canupp

DJC/kp
Attachments
cc: Deborah Whitten (dwhitten@camber.com)

EEOC000236