# EXHIBIT C

Huntsville Court Reporting

---

**1**

1    IN THE EASTERN DISTRICT COURT FOR THE
2       EASTERN DISTRICT OF VIRGINIA
3         ALEXANDRIA DIVISION
4
5   UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY
6   COMMISSION,
7     Plaintiff,
8
9   vs.      CASE NO. 17-CV-01084-AJT-JFA
10
11  CAMBER CORPORATION,
12    Defendant.
13    *  *  *  *  *  *  *  *  *
14          IT IS STIPULATED AND AGREED, by
15  and between the parties through their
16  respective counsel, that the deposition
17  of:
18          DEBORAH WHITTEN,
19  may be taken before Heather Spier, Court
20  Reporter and Notary Public, State at
21  Large, pursuant to Rule 30 of the Federal
22  Rules of Civil Procedure, at 7027 Old
23  Madison Pike, Suite 108, Huntsville,
24  Alabama on the 3rd day of April 2018 at
25  9:00 a.m.

---

**2**

1           STIPULATIONS
2
3     IT IS FURTHER STIPULATED AND AGREED that
4   the signature to and reading of the
5   deposition by the witness is not waived,
6   the deposition to have the same force and
7   effect as if full compliance had been had
8   with all laws and rules of Court relating
9   to the taking of depositions.
10    IT IS FURTHER STIPULATED AND AGREED that
11  it shall not be necessary for any
12  objections to be made by counsel to any
13  questions, except as to form or leading
14  questions, and that counsel for the
15  parties may make objections and assign
16  grounds at the time of the trial, or at
17  the time said deposition is offered in
18  evidence, or prior thereto.
19    IT IS FURTHER STIPULATED AND AGREED that
20  notice of filing of the deposition by the
21  Commissioner is waived.
22          *  *  *  *  *
23
24
25

---

**3**

1           APPEARANCES
2
3   FOR THE PLAINTIFF:
4     MR. JEFFREY A. STERN
5     Attorney at Law
6     EEOC, Cleveland Field Office
7     1240 East Ninth Street, Suite 3001
8     AJC Federal Building
9     Cleveland, Ohio 44199
10    216-522-7458; Fax 216-522-7430
11
12  FOR THE DEFENDANT:
13    MR. ROBERT L. ORTBALS, JR.
14    Attorney at Law
15    Constangy Brooks, Smith & Prophete
16    7733 Forsyth Boulevard
17    Suite 1325
18    St. Louis, Missouri 63105
19    314-925-7270
20
21  ALSO PRESENT:
22  Mr. Peter Hardwick
23
24
25

---

**4**

1              INDEX
2              PAGE:
3   EXAMINATION BY MR. STERN          5
4
5              EXHIBITS
6   Plaintiff's Exhibit 1             9
7   Plaintiff's Exhibit 2             39
8   Plaintiff's Exhibit 3             44
9   Plaintiff's Exhibit 4             54
10  Plaintiff's Exhibit 5             65
11  Plaintiff's Exhibit 6             67
12  Plaintiff's Exhibit 7             72
13  Plaintiff's Exhibit 9             83
14  Plaintiff's Exhibit 10            91
15
16
17
18
19
20
21
22
23
24
25

---

73

1   A.   Yes.  Yes.
2   Q.   Who's is the sender?
3   A.   Cassee Ger was my -- another HR
4   generalist.  She took over Lisa Thompson's
5   place when Lisa resigned.
6   Q.   Also in Fairfax?
7   A.   Yes.  But she actually split her
8   time between the Fairfax and Centerville
9   office.  They were close.  But she was in
10  the D.C. area.
11  Q.   Exhibit 7, Page 2070 is an email
12  from her to you on May 8, 2015 on the
13  subject of "job offer requests - Saritha
14  Prathipati --"
15  A.   Right.
16  Q.   "-- senior .NET developer,"
17  right?
18  A.   Right.
19  Q.   What is "TTP conversion!"
20  A.   That means temp to perm
21  conversion.
22  Q.   What does that mean?
23  A.   Temp to perm, it means they used
24  an agency.
25  Q.   Is that Ms. Prathipati had been a

74

1   temp and was being converted to permanent?
2   A.   Yes.
3   Q.   As a senior .Net developer,
4   right?
5   A.   Well, the email says senior .Net
6   developer.  The requisition just says .Net
7   developer.
8   Q.   And the requisition starting at
9   Page 2971 states that the requisition
10  information section -- and it's right
11  about the middle of the document, reason
12  for the opening was a resignation?
13  A.   Yes.
14  Q.   And the name of the person being
15  replaced is Ashok Pai, right?
16  A.   Yes.
17  Q.   Did Saritha Prathipati replace
18  Mr. Pai?
19  A.   She or he, I'm not even sure,
20  took the position that that changed into,
21  apparently.
22  Q.   Have you had any discussion with
23  anyone at Camber regarding who replaced
24  Mr. Pai?
25  A.   When I was first responding to

75

1   the charge we talked to Atif about who
2   replaced him.
3   Q.   What was the gist of what Atif
4   told you?
5   A.   At the time he told me it was a
6   Peter Chu.
7   Q.   Any discussion with Atif or
8   anyone else at Camber about anyone other
9   than Mr. Chu replacing Mr. Pai?
10  A.   No.
11  Q.   What role did HR have with
12  respect to temp employees such as Ms.
13  Prathipati before she was converted to
14  perm?
15  A.   I didn't have any -- I didn't
16  have any responsibility for the temp
17  hires.  They just went straight through an
18  agency.  They didn't -- I didn't have
19  anything to do with them until they became
20  actual Camber employees.
21  Q.   By agency you mean some eternal
22  job, firm, employment firm?
23  A.   Yes.
24  Q.   You're not implying that that was
25  handled by an inhouse Camber recruiter?

76

1   A.   Right.
2   Q.   The next document is PAI002310
3   through 2326 is Exhibit 8 to your
4   deposition.
5   A.   Okay.
6   Q.   Is Exhibit 8 to your deposition
7   one of the documents you reviewed
8   recently?
9   A.   No, we didn't go over this.  I
10  might have went over a couple of pages on
11  this, but it doesn't -- I don't -- I don't
12  think so.  (Examining document.)
13  Q.   Let me know when you're ready.
14  A.   I'm ready.
15  Q.   Exhibit 8 to your deposition is
16  an email printed by you from Deidra Martin
17  September 17, 2015?
18  A.   Right.
19  Q.   Forwarding to you email string
20  "absence from work due to family member's
21  illness" and some images of FMLA
22  paperwork, Dr. Kleinman, right?
23  A.   Right.
24  Q.   Now, the first email in this
25  string, and by first I mean earliest, is

97

1    Q.   Did you receive any that were
2  provided to you by Mr. Khalil?
3    A.   I don't know.  I don't think -- I
4  don't remember.
5    Q.   When you went into the system to
6  find the requisitions to print during the
7  EEOC investigation --
8    A.   Right.
9    Q.   -- how did you know which ones to
10 print?  That is, how did you find them?
11   A.   I would have had --
12   Q.   Tell me a little bit of how you
13 found them.
14   A.   I would have had to know the name
15 of the person, and then I would have had
16 to find the associated requisition to go
17 with it.
18   Q.   And how did you acquire the names
19 of the person to find their associated
20 requisitions?
21   A.   Since I'm not sure exactly which
22 requisitions you're talking to, it would
23 have been from a hiring list or a note
24 Atif gave me Peter Chung's name.
25   Q.   Did Atif provide you with the

98

1  name of Saritha Prathipati?
2    A.   I don't remember that at the
3  time.  I mean, at the time he just said
4  Peter Chung.
5    Q.   Who was Nedi Panchasara.
6    A.   Nedi was another -- I think she
7  was a division manager at the time.
8    Q.   Camber has indicated that you
9  maybe able to testify about interactions
10 you've had with with various individuals.
11 So I'm going to go through a list of
12 individuals and find out what interacting
13 you've had.
14        So I'll ask it this way, any
15 discussions or any communication with any
16 of these persons about Mr. Pai, about his
17 transfer request, about Camber's treating
18 his request as a resignation, the FMLA
19 leave to care for his son, his termination
20 of his replacement.
21        Now, we can break them down.  And
22 I don't need you to discuss what you have
23 already told me.
24   A.   Okay.
25   Q.   But let me go through the list.

99

1  And if you have forgotten all those
2  different things, we can break them down
3  one at a time.
4        MR. ORTBALS:  I'm going to object
5  to that entire form of the question as
6  being compound, argumentative,
7  mischaracterizing the evidence.  But we'll
8  go through it.
9    Q.   Okay.  Well, this time we'll
10 break it down.  Any discussions or other
11 communications with the following about
12 Mr. Pai:  Christopher Towne?
13   A.   What was that name again?
14   Q.   First name Christopher, surname
15 Towne?
16   A.   I don't even remember who that
17 is.
18   Q.   Anyone at EOIR, such as Howard
19 Myatt, David Fruewald or Debra Whitaker?
20   A.   I would have had no discussion
21 with the customer, no.
22   Q.   Nan Li?
23   A.   I don't recall.
24   Q.   Supervisors of Mr. Pai?
25   A.   Atif.

100

1    Q.   Anyone else as a supervisor of
2  Mr. Pai?
3    A.   I don't remember speaking to
4  anybody else.
5    Q.   Sudhakar Nallamothu?
6    A.   I don't remember speaking
7  directly to him.
8    Q.   How about indirectly?
9    A.   It would have been what Atif told
10 me.
11   Q.   What did Atif tell you about
12 Sudhakar Nallamothu and Mr. Pai?
13   A.   Just what I've already told you
14 about.  I don't remember anything else.
15   Q.   Emishaw Dejene Daddi?
16   A.   No.
17   Q.   Emita Choudhry?
18   A.   No.
19   Q.   Joe Barbaretta?
20   A.   No.
21   Q.   Mike Williams?
22   A.   Yes, I did have some discussions
23 with him.
24   Q.   What discussions with Mike
25 Williams about Mr. Pai?

105

1    MR. ORTBALS:  Objection.  It's
2 argumentative and speculative, but you can
3 answer.
4    A.   I don't think so.
5    Q.   Ever discuss that with anyone at
6 Camber?
7    A.   No.
8    MR. ORTBALS:  Same objection to
9 form.
10    Q.   Do you have any relatives
11 employed at Camber?
12    A.   No.
13    Q.   What's the name of the larger
14 company that purchased Camber?
15    A.   Huntington Industry.
16    Q.   Any relatives employed by
17 Huntington?
18    A.   No.
19    Q.   During your gathering of
20 information in response to the charge by
21 Mr. Pai that you had mentioned, did you
22 come to understand whether there were any
23 funded indirect or contingent positions
24 available in California or the western
25 states in September or October 2014?

106

1    MR. ORTBALS:  Object to the form.
2 Requires the witness to testify to
3 documents that aren't in evidence.  But if
4 you know the answer, you can answer.
5    A.   I don't know about the time
6 frame.  I think we hired a few
7 individuals, but they weren't anywhere
8 along the same skill set as Mr. Pai.
9    Q.   Did there come a time when there
10 were contingent positions in connection
11 with Sylar Security in or about Southern
12 California, San Diego?
13    A.   I don't recall that.
14    Q.   Did you come to understand that
15 Ms. Prathipati was working as a temp from
16 late 2014 through her hire at Camber May
17 2015 while her security was being
18 investigated?
19    A.   I'm not even sure about the last
20 part, but that just came to my attention
21 last week.
22    Q.   Any time before last week when it
23 came to your attention?
24    A.   No.
25    Q.   Other than the Prathipati

107

1 documents that we've looked at in your
2 deposition today, did you come to find any
3 other documents?
4    To ask the question over, are
5 there other Prathipati documents that
6 weren't included in the package of
7 exhibits that you've looked at today?
8    A.   I mean, I'm sure there's an offer
9 letter, but nothing about the requisition
10 or position.
11    Q.   Any documents explaining why Ms.
12 Prathipati was working as a temp until she
13 became permanent?
14    A.   No.
15    Q.   And you did not find any
16 requisitions regarding Ms. Prathipati when
17 you were looking using names provided by
18 Mr. Khalil?
19    A.   Apparently not.
20    Q.   Fair to say if that name had been
21 provided to you by Mr. Khalil during the
22 investigation, you would have looked for
23 those documents --
24    A.   Yes.
25    Q.   -- in your search?

108

1    A.   Yes.
2    Q.   Yes?  Did Mr. Jain supply any
3 documents to you during the EEOC
4 investigation?
5    A.   I don't remember him giving me
6 anything.
7    Q.   He didn't provide you any names
8 to search for in the requisition database?
9    A.   I wouldn't -- would not think Mr.
10 Jain would do that, no.  He's not that
11 level.
12    Q.   His subordinate Mr. Khalil would
13 have done that, right?
14    A.   Right.
15    MR. STERN:  Bob, do you have any
16 questions?
17    MR. ORTBALS:  No, I don't have
18 any questions.
19    Q.   I have no further questions.  The
20 reporter will type up the transcript which
21 will be made available for your review and
22 signature.  You don't have to sign, but if
23 you do, it will be made available.
24    A.   Okay.
25    Q.   Would you prefer to have it sent