IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| United States Equal Employment Opportunity Commission,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>Camber Corporation,<br><br>　　　　　　　　　　Defendant. | Case No.  1:17-cv-01084-AJT-JFA<br><br><br>Defendant's Reply Memorandum in Support of its Motion for Summary Judgment |

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

Theresa M. Connolly (VA Bar 46583)
12500 Fair Lakes Circle, Suite 300
Fairfax, VA 22033
Telephone: 571.522.6108
Facsimile: 571.281.2858
tconnolly@constangy.com

Donald S. Prophete (*pro hac vice*)
2600 Grand Blvd., Suite 750
Kansas City, MO 64118
Telephone: 816.472.6400
Facsimile: 816.472.6401
dprophete@constangy.com

Robert L. Ortbals, Jr. (*pro hac vice*)
7733 Forsyth Blvd., Suite 1325
St. Louis, MO 63105
Telephone: 314.925.7270
Facsimile: 314.925.7278
rortbals@constangy.com

**Attorneys for Defendant**

EEOC's claims present straightforward issues that merit summary judgment. EEOC has not demonstrated that Camber ended Pai's employment because of discriminatory animus towards his son's disability. EEOC also has not established that Pai, hired at the age of 63, was discharged less than two years later because of his age. Thus, summary judgment for Camber should be granted.

### RESPONSE TO EEOC'S STATEMENT OF DISPUTED MATERIAL FACTS

EEOC sets forth its own version of the facts that does not comply with Local Rule 56(B) and the Rule 16(B) Scheduling Order (Doc. 16). Local Rule 56(B) requires the opposing brief to "include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." Similarly, under the scheduling order, an opposing brief "must include a separately captioned section within the brief addressing, in numbered-paragraph form corresponding to the movant's section, each of the movant's enumerated facts and indicating whether the non-movant admits or disputes the fact with appropriate citations to the record." *See* Doc. 16, ¶ 9(e). Although EEOC's opposition brief includes a separately captioned fact section, none of EEOC's 42 numbered paragraphs corresponds to Camber's statement of facts. Under these circumstances, "the Court may assume that facts identified by the moving party in its listing of material facts are admitted." Local Rule 56(B); *see also* Doc. 16, ¶ 9(e). Thus, the Court should deem Camber's statement of uncontroverted material facts admitted. *See, e.g., Rodriguez v. Fanning*, No. 1:15-cv-1654, 2016 WL 10586250, at *2 (E.D. Va. Nov. 22, 2016).

Camber does not dispute the following facts from EEOC's statement of facts, many of which restate facts set forth in Camber's facts or are immaterial: 8, 23, 28, 31, 34-39. Camber responds to EEOC's remaining facts as follows:

1

**(P's SOF ¶ 1):** EEOC's statement "during one of his son Ashwin's hospitalizations" is not supported by the record cited by EEOC. The court should disregard it. *See* Local Rule 56(B); *Smith v. U.S. Cong.*, No. 3:12CV45, 2015 WL 1011545, at *3 (E.D. Va. Mar. 6, 2015) (the court is not required to sift through the record searching for evidence to support opposition to summary judgment). It is immaterial that Khalil is "nearly 25 years younger than Pai" since Khalil was also nearly 25 years younger when Khalil hired Pai at age 63. *See* D's SOF ¶¶ 4, 7-8.

**(P's SOF ¶ 2, 30):** *See* D's SOF ¶¶ 3, 15. EEOC's complaint alleged that Pai was employed as a Software Systems Architect. *See* Doc. 1, ¶¶ 19(b), (d)-(e). Camber's answer admitted that fact. *See* Doc. 5, ¶¶ 19(b), (d)-(e). Similarly, testimony and personnel records show that was Pai's job. *See* Doc. 37-1, p. 7, 42:10-14; Doc. 37-2, p. 6, 44:17-21; Doc. 37-5, p. 2; Ex. RR, Pai's Personnel Records (EEOC000132, 136, 149, 154-56). Thus, it is bizarre that EEOC is trying to create a fact dispute regarding Pai's job title based on the testimony of a third-party, Myatt, who himself testified that he did not know what job titles Camber used: "And how are you aware that that was his job title within Camber? I would not be. I have no idea what titles Camber uses." *See* Doc. 42-7, p. 9, 72:10-18.

**(P's SOF ¶ 3):** EEOC does not cite any record evidence to support this fact. Instead, EEOC simply attempts to recast portions of D's SOF ¶¶ 25, 26, and 31. There is no record citation supporting the "August 31, 2014" date set forth by EEOC, which should be disregarded.

**(P's SOF ¶ 4):** EEOC's fact paraphrases an e-mail. The e-mail is quoted in D's SOF ¶ 26.

**(P's SOF ¶ 5):** The substance of this fact is addressed in D's SOF ¶¶ 30-32.

**(P's SOF ¶ 6):** EEOC's fact paraphrases an e-mail. The e-mail is quoted in D's SOF ¶ 33. EEOC's statement, "Instead of replying to Pai's emails," is unsupported argument that should be disregarded by the court.

2

**(P's SOF ¶ 7):** EEOC attempts to support its assertion that "Camber admits the generalist began processing paperwork terminating Pai" by citing to the position statement that was submitted to EEOC by Camber's previous counsel during EEOC's investigation into Pai's charge of discrimination. The court should treat this assertion as unsupported by the record because unsworn, unverified assertions made by Camber's counsel to EEOC in correspondence prepared by counsel are not "facts." *See, e.g., McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373-74 (7th Cir. 1992) (declining to bind employer to positions initially asserted in administrative charge proceedings); *Sharon Council v. Tri-Star Constr. Co.*, No. 01 Civ. 11788(BSJ), 2004 WL 253298, at *3 & n.4 (S.D.N.Y. Feb. 10, 2004) (declining to bind employer to positions in unsworn, unverified position statement prepared by counsel and submitted to EEOC during administrative proceedings when actual record developed during subsequent litigation revealed inconsistencies).

**(P's SOF ¶ 9):** EEOC's argumentative assertion that "Pai, unaware that Camber was processing his transfer request as a 'resignation,' sought FMLA leave necessitated by his son's medical condition" is unsupported by the record cited by EEOC and should be disregarded. EEOC's assertion that "Khalil did not tell Pai Camber had already begun transferring his request as a resignation" is unsupported by the record cited and should be disregarded. It is undisputed that it was Camber's Benefits Manager, Deidra Martin, who first reached out to Pai about FML. *See* D's SOF ¶¶ 40-41. EEOC's assertion that Pai was "granted" FML leave on September 10 mischaracterizes and is unsupported by the record. On September 10, Martin told Pai that he was "eligible" for FML and encouraged him to return the medical certification form "quickly so that we can get your FML request set up." *See* D's SOF ¶ 43; Doc. 37-20, pp. 7-8. Finally, EEOC's assertion that "These emails were forwarded to Khalil by Pai" is unsupported and should be disregarded because EEOC is attempting to prove this assertion though inadmissible hearsay from

3

Pai and in violation of the best evidence rule. *See* Fed. R. Evid. 1001-1003. The record citation relied on by EEOC is not an actual forwarding of email from Pai to Khalil, rather it is a statement from Pai to Khalil in a different e-mail claiming that he had forwarded the e-mail and paraphrasing some of its contents. *See* Doc. 37-24, p. 3. EEOC cannot rely on inadmissible evidence to oppose summary judgment. *See* Fed. R. Civ. P. 56(c)(2); *Reese v. Meritor Auto., Inc.*, 5 Fed. Appx. 239, 244 (4th Cir. 2001) (hearsay could not create a genuine issue of material fact); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, *in the form of admissible evidence*, that could carry the burden of proof of his claim at trial.") (emphasis added).

**(P's SOF ¶ 10):** EEOC's fact is based entirely on a written document, an e-mail from Pai. EEOC has mischaracterized the document and inserted argument about its contents. EEOC's assertion that "In the email, Pai made clear that his approved FMLA leave would extend beyond October 31st, and, therefore, asked Camber to continue seeking a transfer for him during the course of his FMLA period" is not contained in the e-mail. *See* D's SOF ¶ 48; Doc. 37-23, p.2. Again, Pai had not yet been "approved" for FML. Camber was awaiting his medical certification, which Pai ultimately submitted on September 24. *See* D's SOF ¶¶ 40-44. EEOC's assertion that "Pai also told Khalil that he was willing to accept a lower paying position within Camber" is also inaccurate. What Pai actually wrote was, "If it is not possible to justify my current salary when Non-billable, my pay could be temporarily reduced (when not on FML)." *See* D's SOF ¶ 48; Doc. 37-23, p. 2. Also, EEOC's statement that Pai offered to create and provide training programs "to off-set any inconvenience caused by his FMLA absence and transfer" is argument and is not supported by the record cited. *See* Doc. 37-23, p. 2; *see also* D's SOF ¶¶ 49, 51.

**(P's SOF ¶ 11):** EEOC's fact paraphrases a series of e-mail exchanges between Pai and

4

Lisa Thompson. Those e-mail exchanges are set forth in detail in D's SOF ¶¶ 53-60.

**(P's SOF ¶ 12):** The only portion of EEOC's fact that is supported by the record cited is the portion of the fact that directly quotes from the e-mail. *See* Doc. 37-27, p. 2. The remainder of the fact is unsupported argument that should be disregarded by the court. *See* D's SOF ¶¶ 61-76.

**(P's SOF ¶ 13):** EEOC is attempting to prove its case through the unsworn, unverified assertions of Camber's previous counsel in the position statement, as opposed to the actual evidence that has been developed in the record. *See* D's SOF ¶¶ 36-39, 60-63. As discussed above regarding P's SOF ¶ 7, the court should reject EEOC's attempt to prove its case by position statement. Camber does not dispute the portion of EEOC's fact setting forth Myatt's job title and status as EOIR's contract representative on the Camber contract. *See* D's SOF ¶ 24.

**(P's SOF ¶ 14):** *See* D's SOF ¶¶ 60-63. That Myatt's e-mail was not a formal request to remove Pai from the contract is immaterial. It is Camber's perception of Myatt's request to replace Pai that is relevant. *See, e.g., Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (it is the decision-maker's perception that is relevant). Further, the record is clear that Myatt does not recall the reason that he sent the e-mail, "I'm really not sure. I just -- I do not remember the reason for sending the e-mail." *See* Doc. 37-3, p. 13, 84:5-87:9. The court should reject EEOC's attempt to rely on Myatt's speculation about why he sent the e-mail. *See, e.g., Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) ("nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence" to oppose summary judgment).

**(P's SOF ¶ 15):** EEOC's fact paraphrases a series of e-mail exchanges between Khalil, Thompson, and Whitten. Those e-mail exchanges are set forth in detail in D's SOF ¶¶ 65-66, 75-76.

**(P's SOF ¶ 16):** *See* D's SOF ¶ 76 for Khalil's complete response to Thompson.

**(P's SOF ¶ 17):** *See* D's SOF ¶ 77 for Jain's complete e-mail to Whitten. Notably, Jain did not have an understanding of the medical condition of Pai's son. *See* D's SOF ¶ 78.

**(P's SOF ¶¶ 18-22, 24-27):** EEOC is attempting to prove its case through the unsworn, unverified assertions of Camber's previous counsel in the position statement and other correspondence to EEOC, as opposed to the actual evidence that has been developed in the record. *See* D's SOF ¶ 47, 87. As discussed above regarding P's SOF ¶ 7, the court should reject EEOC's attempt to prove its case by position statement and attorney correspondence. Moreover, Khalil explained in his deposition that during the charge investigation—which began nearly a year after Pai's employment ended—that he had recalled that Peter Chu had replaced Pai, but that he now understood that the contemporaneous records showed that Prathipati replaced Pai.[1] *See* Doc. 42-14, p. 6, 45:14-47:4.

**(P's SOF ¶ 29):** Undisputed that Barbaretta was a Software Systems Architect. Pai was also a Software Systems Architect. *See* D.'s SOF ¶¶ 3, 15.

**(P's SOF ¶ 32):** *See* D's SOF ¶¶ 60-63. That Myatt's e-mail was not a formal request to remove Pai from the contract is immaterial. It is Camber's perception of Myatt's request to replace Pai that is relevant. As discussed above, EEOC's bizarre insistence that Pai was employed as a developer and not a Software Systems Architect is belied by the record. *See* D's SOF ¶¶ 3, 15, 36-39, 47, 80, 85-87.

**(P's SOF ¶ 33):** Unsupported. EEOC is relying on testimony from Myatt in which he is

---

[1] This line of facts is ultimately immaterial because Prathipati, Chu, and Emishaw are all substantially younger than Pai for ADEA *prima facie* case purposes. *See, e.g., Duffy v. Belk, Inc.*, 477 Fed. Appx. 91, 94 (4th Cir. 2012) (replacement 20-years younger than the plaintiff was "substantially younger").

6

testifying to the contents of documents regarding the labor category under which Pai was charged to the government. Thus, Myatt's testimony is inadmissible under the best evidence rule. *See* Fed. R. Evid. 1001-1003. Indeed, Camber's records demonstrate that Pai's labor category was a subject matter expert. *See* Doc. 37-5, p. 2; Ex. RR, Pai's Personnel Records (EEOC000132, 147, 156). Regardless, this fact is immaterial because the change in the position was not based on a change in labor category, but, rather, a change from Software Systems Architect to Software (.NET) Developer. *See* D's SOF ¶¶ 3, 15, 36-39, 47, 80, 85-87.

(**P's SOF ¶¶ 40-42**): Immaterial. Camber's transfer of Nance nearly a year after Pai's employment ended is irrelevant to EEOC's claims. As discussed below, EEOC has abandoned its failure-to-transfer claim under the ADEA. Moreover, EEOC has not demonstrated that Nance is a similarly situated comparator to Pai in all relevant respects. *See Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010).

ARGUMENT

## I. EEOC has not presented any new facts changing the appropriate result for its associational disability discrimination claim—dismissal.

### A. EEOC has not shown that the disability of Pai's son was a determining factor in Pai's discharge.

EEOC acknowledges that to establish its *prima facie* case it must demonstrate that the disability of Pai's son was a determining factor in Pai's discharge. *See* Doc. 42, p. 15; *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). But EEOC cites no authority setting forth what is required for it to meet this burden. In failing to do so, EEOC ignores an entire body of case law developed by the circuit courts analyzing this prong of the *prima facie* case. Instead, EEOC contends that it is not required to show that Camber was motivated by unfounded stereotypes or assumptions about the disability of Pai's son. *See* Doc. 42, pp. 13-14.

7

EEOC's view is not supported by the associational disability discrimination case law. *See, e.g., Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 511 (3d Cir. 2009) ("We agree with this view, which comports with the language of the statute, because a decision motivated by unfounded stereotypes or assumptions about the need to care for a disabled person may be fairly construed as 'because of the … disability' itself.") (quoting 42 U.S.C. § 12112(b)(4)); *Oliveras-Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 26 (1st Cir. 2000) ("The legislative history of section 12112(b)(4) makes clear that the provision was intended to protect qualified individuals from adverse job actions based on 'unfounded stereotypes and assumptions' arising from the employees' relationships with particular disabled persons.")

Moreover, "EEOC also has concluded that this was the intended scope of the provision, as indicated through the three examples of forbidden association discrimination set out in its Interpretive Guidance on this provision of the ADA[.]" *Oliveras-Sifre*, 214 F.3d at 26 (citing *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1085 (10th Cir. 1997) (citing 29 C.F.R. Pt. 1630 App. § 1630.8)). Thus, in evaluating what circumstances raise an inference that a relative's disability was a determining factor in the employer's decision, courts have recognized three situations:

> 1) "expense," in which an employee suffers an adverse action because of his association with a disabled individual covered by the employer's insurance, which the employer believes (rightly or wrongly) will be costly; 2) "disability by association," in which the employer fears that the employee may contract or is genetically predisposed to develop the disability of the person with whom he is associated; and 3) "distraction," in which the employer fears that the employee will be inattentive at work due to the disability of the disabled person.

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016) (citing *Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir. 2004)); *see also Williams v. Union Underwear Co., Inc.*, 614 Fed. Appx. 249, 254 (6th Cir. 2015).

8

While the Fourth Circuit has not had the occasion to expressly recognize these three situations, they are consistent with its early case law on this seldom litigated provision. For example, regarding the "distraction" situation, in *Tyndall*, the court articulated that "the Interpretive Guidelines to the ADA provide that an employer may not make decisions based on the 'belie[f] that the [employee] would have to miss work' in order to take care of a disabled person." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 214 (4th Cir. 1994) (quoting 29 C.F.R. Pt. 1630 App. § 1630.8); *accord Graziadio*, 817 F.3d at 432 ("[Employee] has not argued that she was terminated because her employer feared she would not be at work at all in the future in order to take care of her disabled son.") The *Tyndall* court then held:

> Because [employee]'s termination was not based on any assumption regarding future absences related to [son]'s care, but instead resulted from her record of past absences *and her clear indication that she needed additional time off*, we hold that [employer]'s actions did not constitute discrimination based on [employee]'s association with a disabled individual.

31 F.3d at 214 (emphasis added).

Similarly, in *Ennis*, in evaluating whether the employee had established the fourth prong of the *prima facie* case the court considered employee's argument that employer wanted to prevent its employees from filing expensive health-insurance claims, that employer knew that employee's son was HIV-positive and would incur substantial medical expenses, and that employer decided to fire employee as a direct result (i.e., the "expense" situation). 53 F.3d at 62. As evidence to support her "expense" argument, employee pointed to a memo from the director of human resources to all employees describing the employer's insurance coverage, which noted scenarios that could cause insurance premiums to increase. *Id.* at 57, 62. Ultimately, the court concluded that the memo was "too remote and tenuous" to link employee's discharge to her son's HIV-positive status. *Id.* at 62.

9

In sum, Fourth Circuit authority is consistent with the view adopted by the other circuits that in order to prove the fourth prong of the *prima facie* case an employee must provide evidence that the employer was motivated by unfounded stereotypes or assumptions. EEOC's argument to the contrary contradicts EEOC's own Interpretive Guidance, the ADA's legislative history, and the body of circuit case law on this issue. Because EEOC has not offered any evidence or argument demonstrating that Camber discharged Pai based on unfounded stereotypes or assumptions about his son's disability, EEOC has not established that the disability of Pai's son was a determining factor in Pai's discharge as a matter of law.

### 1. The court should reject EEOC's temporal proximity argument.

EEOC contends that it can establish discriminatory motive because "Pai's documented requests for a transfer to care for his disabled son led to Camber's converting those requests into a 'resignation' within an hour." *See* Doc. 42, p. 16. The court should reject this argument. While EEOC has been careful to avoid explicitly arguing that Pai was seeking an accommodation, EEOC is implicitly arguing that Pai's transfer request was a protected activity, and, as such, the temporal proximity between the request and Camber's action creates an inference of discriminatory motive. Through this argument, EEOC is implicitly attempting to expand the scope of the ADA's associational disability provision.

The associational disability provision of the ADA does not require employers to reasonably accommodate nondisabled employees. *See* Doc. 18, pp. 5-6; *see also Tyndall*, 31 F.3d at 214 ("The ADA does not require an employer to restructure an employee's work schedule to enable the employee to care for a relative with a disability."); *Den Hartog*, 129 F.3d at 1084 ("[T]he ADA does not require an employer to make any 'reasonable accommodation' to the disabilities of relatives or associates of an employee who is not himself disabled.") As such, in

10

an effort to avoid expanding the associational disability provision, courts have rejected employee efforts to establish discriminatory motive through the employer's rejection of or adverse reaction to the employee's *de facto* accommodation request. For example, in *Tyndall*, the court concluded:

> [Employee] contends that [employer]'s decision to terminate her stemmed from the assumption that [employee] would have to take additional time off in order to take care of her disabled son .... We find no merit in this argument. [Employer] did not make an unfounded assumption that [employee] would have to miss work to take care of [son]. Rather, [employer] responded to [employee]'s record of extended absences in connection with [son]'s care *and her actual statement that she would, in fact, have to miss additional work in order to be with her son.*

31 F.3d at 214 (emphasis added). "Under the association provision, there is a material distinction between firing an employee because of a relative's disability and firing an employee because of the need to take time off to care for the relative." *Erdman*, 582 F.3d at 510. "Importantly, while [employee]'s poor performance at work was likely due to his wife's illness, that is irrelevant under this provision of the Act. [Employee] was not entitled to a reasonable accommodation on account of his wife's disability." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 489 (6th Cir. 2011); *see also Pennington v. Wal-Mart Stores E., LP*, No. 7:12-CV-860-SLB, 2014 WL 1259727, at *5 (N.D. Ala. Mar. 26, 2014) (finding no valid claim where the relative's disability "caused [employee] to miss multiple days of scheduled work per month," because "[w]hat [employee] needed … was an accommodation" and "federal law does not require employers to make reasonable accommodations for employees to care for disabled relatives").

EEOC does not cite any authority regarding associational disability discrimination to support its temporal proximity argument. Instead, it solely relies on a nonbinding USERRA case that is distinguishable in two fundamental respects. *See* Doc. 42, p. 16 n.1. First, "[u]nder USERRA, 'employers have the burden of proving that the discharge was reasonable' making it

'difficult for employers to achieve summary judgment on claims' under the statute." *Sutherland v. SOS Int'l, Ltd.*, 541 F. Supp. 2d 787, 792 (E.D. Va. 2008) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006)). In contrast, it is EEOC's burden under the ADA to prove that Pai's association with his disabled son was the "but-for" cause of Camber's discharge decision. *See Gentry v. E.W. Partners Club Mgmt. Co., Inc.*, 816 F.3d 228, 234-36 (4th Cir. 2016) (applying "but-for" causation under ADA).

Second, USERRA case law recognizes that discriminatory motive "'may be reasonably inferred from … proximity in time between the employee's military activity and the adverse-employment action.'" *Sutherland*, 541 F. Supp. 2d at 793 (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)). Thus, it is unsurprising that the *Sutherland* court found it relevant to discriminatory motive that employer discharged employee shortly after employee told employer of an upcoming military obligation requiring two weeks of leave from work and the likelihood of more extensive leave in the future—because USERRA explicitly protects an employee's right to military leave. *Id.* In contrast, **"Pai's documented requests for a transfer to care for his disabled son"** *were not protected* by the ADA's associational disability provisions.

The court should reject EEOC's legally unsupported attempt to expand the ADA's associational disability provisions to convert *de facto* accommodation requests into protected activities.[2]

---

[2] For the same reasons, EEOC's argument that "Pai was on approved FMLA leave for his son's disability" at the time he was notified of his discharge does not raise an inference of discriminatory motive. *See* Doc. 42, p. 18. This is not an FMLA case and EEOC has no enforcement jurisdiction under the FMLA. *See* 29 U.S.C. §§ 2616(a), 2617(b) (giving U.S. Department of Labor investigative authority and the authority to bring a civil action under the FMLA); *Guadalupe v. City of Los Angeles*, No. CV 08-2194 AHM (JWJx), 2008 WL 5179034, at *3 (C.D. Cal. Dec. 9, 2008) ("The FMLA is not enforced by the EEOC"). As the Third Circuit recognized in *Erdman*, "The most [employee] can hope to show is that she was fired for requesting time off to care for [daughter] (the basis for her FMLA claim), *not because of unfounded stereotypes or assumptions*

12

### 2. *EEOC cannot rely on pretext arguments to establish its prima facie case.*

Because EEOC has made no effort to properly establish its *prima facie* case by demonstrating that Camber discharged Pai based on unfounded stereotypes or assumptions about his son's disability, EEOC spends the bulk of its brief examining Camber's articulated reasons for the end of Pai's employment and arguing that the court should infer discriminatory motive because those reasons were allegedly concocted by Camber to conceal its true motives. *See* Doc. 42, pp. 15-18. But this is a pretext argument. "A plaintiff cannot bypass the prima facie showing requirement and must offer some evidence to suggest that the adverse employment action he or she suffered was due in some measure to discriminatory animus before the employer is required to articulate a non-discriminatory reason for the action." *Stansberry*, 651 F.3d at 488; *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146-48 (2000) (explaining that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated").

In *Stansberry*, employee attempted to prove discriminatory motive for associational disability discrimination by arguing that the court could infer that he was discharged because of his wife's illness because the decision-maker lied about his conversation with employee and the reason for terminating employee. 651 F.3d at 488. The Sixth Circuit rejected this argument as improperly conflating the *prima facie* case and pretext inquiries under *McDonnell Douglass*

---

... *about care required by disabled persons*." 582 F.3d at 511 (emphasis added). Thus, the *Erdman* court held that employee had a valid claim under the FMLA, but that employee had not proved discriminatory motive for associational disability discrimination and affirmed summary judgment on the ADA claim. *Id*. at 509-12; *see also Graziadio*, 817 F.3d at 428-29, 431-33 (holding that employee's FMLA interference and retaliation claims survived summary judgment but affirming summary judgment on employee's associational disability claim under the ADA).

13

because establishing the *prima facie* case is what creates the inference of discrimination. *Id.* at 488-89. Thus, "even if [decision-maker] had lied about the reason for terminating [employee], that does not show that [employer] terminated [employee] on account of his wife's disability because [employee] has offered no evidence to create an inference that he was fired on account of his wife's disability." *Id.* at 489. Like the employee in *Stansberry*, EEOC cannot use attacks on Camber's articulated reasons for the end of Pai's employment as a basis to infer discriminatory motive.

### 3. The undisputed record demonstrates that Camber did not have a discriminatory motive based on the disability of Pai's son.

There is significant evidence in the record—which EEOC does not even attempt to address, much less dispute—demonstrating that Camber did not have discriminatory animus towards Pai based on his son's disability. In *Tyndall*, the Fourth Circuit applied the strong inference of nondiscrimination set forth in *Proud* to disability discrimination claims under the ADA. 31 F.3d at 214-15. Notably, courts applying *Proud* have not limited the strong inference to only hiring and firing situations. *See, e.g., Miller v. Gruenberg*, No. 1:16-cv-856, 2017 WL 1229735, at *9 (E.D. Va. Mar. 31, 2017) (where same actor selected employee to act as a facilitator for a corporate program for three years but then did not select employee for two years after, *Proud* inference was applied), *aff'd as modified,* 699 Fed. Appx. 204 (4th Cir. 2017); *Gilliam v. Lee County Sch. Bd.*, No. 2:01CV00083, 2002 WL 31906274, at *4 (W.D. Va. Dec. 30, 2002) ("Since these two board members supported her only two years before, there is an inference that they had no discriminatory intent for their later action.")

EEOC offers no explanation as to how it can prove that within a matter of months, Khalil went from being supportive of and requesting special accommodations from EOIR for Pai, to supposedly concocting reasons to get rid of him because of his son's disability. Instead, EEOC pretends as though this evidence does not exist. EEOC is unable to establish its *prima facie* case

14

because it has not shown that the disability of Pai's son was a determining factor in Pai's discharge.

### B. Regardless, EEOC has not established pretext.

*Reeves* recognized "that 'the fact-finder's rejection of the employer's legitimate, nondiscriminatory reason for its action *does not compel* judgment for the plaintiff.'" *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000) (quoting *Reeves*, 530 U.S. at 146 (emphasis in original)). "Put another way, in *Reeves* the Supreme Court held that when a plaintiff establishes a prima facie employment discrimination case and that his employer's explanation is pretextual, *this does not automatically create a jury question*, but it *may* do so." *Id.* (emphasis added and in original). Consequently, even if an employer gives conflicting or shifting explanations for its decision, those explanations demonstrate pretext only if the evidence also suggests that discrimination was a "but-for" cause of the decision. *See Smyth-Riding v. Scis. & Eng'g Servs., LLC*, 699 Fed. Appx. 146, 153-54 (4th Cir. 2017) (citing *Id.* ("Even when a plaintiff demonstrates a prima facie case and pretext, his claim should not be submitted to a jury if there is evidence that precludes a finding of discrimination, that is if no rational factfinder could conclude that the action was discriminatory.")) In other words, to carry the burden of "but-for" causation "a plaintiff must establish 'both that the [employer's] reason was false and that discrimination was the real reason for the challenged conduct.'" *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (quoting *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993))).

"In evaluating employer intent and the question of pretext, the district court may consider 'among other things, the historical background of the decision …; [t]he specific sequence of events leading up to the challenged decision; [d]epartures from the normal procedural sequence; and … [any] contemporary statements by members of the decisionmaking body.'" *Sharif v. United*

*Airlines, Inc.*, 841 F.3d 199, 205 (4th Cir. 2016) (citing *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 489 (1997) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977))).

EEOC fails in its burden to demonstrate that discrimination was the real reason for Camber's conduct. Examining the actual sequence of events and contemporary statements from decision-makers demonstrates that discrimination was not the real reason for Camber's conduct. For starters, it is relevant to lack of discriminatory intent that before Pai ever disclosed that he had a disabled son, Khalil had recommended terminating Pai's employment (with Jain's concurrence). (D's SOF ¶¶ 12-13); *see, e.g., DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (supervisor gave employee a negative performance evaluation before learning about employee's pregnancy).

Moreover, after Pai disclosed his son's disability to Khalil, Pai told Khalil that Pai was going to work with Camber recruiters to try to find a position in which to transfer that was closer to Pai's family in California—Khalil was supportive of this as well and did not treat the conversation as a resignation. (D's SOF ¶ 20). Pai working with a Camber recruiter to find an open position in which to transfer was Camber's normal process. (D's SOF ¶¶ 21-22). Unfortunately, Pai was never able to locate any suitable positions through this process; nor were there any open EOIR positons located somewhere other than Falls Church. (D's SOF ¶¶ 22-23, 92-93). EEOC's contention that Camber "made no effort to transfer" Pai is false. *See* Doc. 42, p. 21. Pai went through Camber's normal process to find a suitable position and he simply did not find one.

What changed on September 8 from Khalil's perspective—which is the only perspective that matters for intent purposes—is that Khalil believed that Pai had decided to leave the EOIR program and move back to California to be with his family. (D's SOF ¶¶ 26-31). It is undisputed

16

that Pai transferring necessarily involved leaving the EOIR program, that Khalil had no authority to authorize Pai to do nonbillable work while he looked for an open position, that Khalil did not have positions in the EOIR program that fit the positions mentioned by Pai, that Khalil again encouraged Pai to look at Camber's open positions and explore those opportunities, and that Pai was hoping that a position could be created for him. (*Id.*) Moreover, Khalil's contemporaneous communications with Thompson show that he honestly believed that Pai had decided to move back to California. (D's SOF ¶ 33). Thompson then immediately confirmed that Pai had provided sufficient information to resign. (D's SOF ¶¶ 34-35). The next day, Khalil notified EOIR that Pai had resigned, which is sequentially consistent with Khalil's honest belief. (D's SOF ¶ 36). During that same meeting, Khalil discussed backfilling Pai's position with a .NET/SharePoint Developer instead of with a Software Systems Architect because the EOIR program's needs had shifted from SharePoint work to more of a .NET skillset. (D's SOF ¶¶ 36-39). On September 16, Camber opened a job requisition for a Software (.NET) Developer because of Pai's resignation. (D's SOF ¶ 48).

*After* Khalil had notified EOIR that Pai had resigned and Camber had posted a different position to backfill because of Pai's resignation, Pai notified Khalil that he had not resigned. (D's SOF ¶ 48). But Pai also did not indicate that he desired to remain in the EOIR program. To the contrary, Pai continued to suggest a number of changes to his job duties (i.e., an accommodation). (D's SOF ¶¶ 48-49). Khalil's contemporaneous communications with Thompson reflect Khalil's understanding that Pai was still looking to leave the EOIR program, but that Pai was proposing to remain employed in California supporting nonbillable work. (D's SOF ¶¶ 50-51). Despite believing that Pai was still trying to leave the EOIR program, Camber did not outright object to Pai's attempt to remain employed with Camber. Khalil conferred with EOIR and let it know that

17

Pai wanted to change his mind and no longer depart the EOIR program on October 31. (D's SOF ¶ 61). The feedback that Khalil received from EOIR was that EOIR did not want to offer Pai the option to remain on the project, and that it wanted Camber to proceed with replacing Pai. (D's SOF ¶ 62). The next day, Myatt sent his e-mail to Khalil memorializing that Camber should proceed with Pai's "replacement" at the government's request. (D's SOF ¶ 63). Khalil then contemporaneously notified Thompson, "Please see request below from the government to *replace* Ashok Pai. I would like to proceed with the 10/31/14 separation. Can we prepare a letter for Ashok?" (D's SOF ¶ 65) (emphasis added).

EEOC argues that Myatt's direction to replace Pai is not the same as going through the formal process to "remove" Pai from service under the contract. But this is just a game of semantics on EEOC's part. It is irrelevant whether the government actually requested that Camber "remove" Pai. *Cf. Bart-Williams v. Exxon Mobil Corp.*, No. 1:16-cv-1338-GBL-TCB, 2017 WL 4401463, at *14 (E.D. Va. Sept. 28, 2017) ("The opinions of coworkers and third parties, to the extent they are not decision makers, are irrelevant.") All that is relevant is what Khalil honestly believed when he received Myatt's e-mail to proceed with Pai's "replacement" (as framed by his discussion with Myatt the day before). The undisputed facts, sequence of events, and contemporaneous communications all demonstrate that Khalil believed that "replacement" meant displacing Pai from the EOIR program.

From there, Khalil received a number of questions from Human Resources about whether EOIR had changed Pai's position. (D's SOF ¶¶ 65-66, 75-76, 80-81). But the contemporaneous dialogue demonstrates that Human Resources was interested in whether there had been a change in Pai's position as it related to Pai's status of being on FMLA leave. (D's SOF ¶¶ 67-74). As discussed above, considerations about Pai's FMLA status are not synonymous with discriminatory

18

intent based on the disability of Pai's son. Similarly, Jain's e-mail to Whitten about moving the termination process forward is also not evidence of discriminatory intent because Jain did not have an understanding that Pai's son was disabled. (D's SOF ¶¶ 77-78); *see, e.g., Smyth-Riding*, 699 Fed. Appx. at 153 ("by definition, an employer cannot take action because of a factor of which it is unaware"); *Tyndall*, 31 F.3d at 214 (ADA protects against the *known* disability of an employee's relative or associate).

In sum, the sequence of events and contemporaneous communications demonstrate the nondiscriminatory basis for Camber's actions. EEOC has not demonstrated that discrimination against the disability of Pai's son was the real reason for the end of Pai's employment. The court should grant Camber summary judgment on EEOC's associational disability discrimination claim.

## II. EEOC has not presented any new facts changing the appropriate result for its ADEA claims—dismissal.[3]

EEOC's brief contends that "Pai was fired 2 and a half years after he was hired—that's not a 'relatively short period of time' and Defendant has not cited to any Fourth Circuit authority holding that it is." *See* Doc. 42, p. 19. EEOC's contention is wrong on two fronts. First, it is undisputed that Pai was hired on November 6, 2012 at age 63, and his employment ended on October 31, 2014. (D's SOF ¶¶ 3-4, 82-83). Pai was employed for *less than* two years. Second, Camber did cite to Fourth Circuit authority applying the *Proud* inference to a two-year time span. *See* Doc. 37, p. 31 (citing *Tyndall*, 31 F.3d at 211 (applying the *Proud* inference to a two-year span)). Moreover, numerous courts within the Fourth Circuit have applied the *Proud* inference to

---

[3] As a threshold matter, EEOC did not respond to Camber's arguments regarding its failure-to-transfer claim, and, thus, EEOC has abandoned the claim. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d, 772, 777 (D. Md. 2010) (failing to respond to argument that claim should be dismissed abandons the claim); *Westry v. North Carolina AT & T State Univ.*, 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003) (failing to respond to the argument raised on summary judgment conceded the argument).

two-year time spans. *See, e.g, Miller*, 2017 WL 1227935, at \*9 (two years); *Sagar v. Oracle Corp.*, 914 F. Supp. 2d 688, 696 (D. Md. 2012) (two years between hiring and firing by same actor); *Spillers v. Brooke County Bd. of Educ.*, No. C.A.5:00-CV-51 STAMP, 2001 WL 34614945, at \*7 (N.D. W. Va. July 11, 2001) (two-year span between promotion and discharge).

EEOC also has presented no evidence demonstrating that Pai's age was the real reason for his discharge. Instead, EEOC argues that Camber changed its explanation about who replaced Pai, going from "two age-protected hires" during the charge investigation to acknowledging during this litigation that it was Prathripati who replaced Pai. *See* Doc. 42, pp. 20-21. But this is not evidence of pretext. Who replaced Pai and whether that person was substantially younger than him is an issue for EEOC's *prima facie* case under the ADEA. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). In seeking to prove pretext, EEOC cannot recast Camber's legitimate, nondiscriminatory reasons for discharging Pai, it must meet each reason head on and rebut that reason. *See, e.g., DeJarnette*, 133 F.3d at 299 (employee's remaining evidence of pretext fails to specifically refute the facts that support employer's nondiscriminatory reasons for discharge); *Odom v. Int'l Paper Co.*, 652 F. Supp. 2d 671, 691 (E.D. Va. 2009), *aff'd* 381 Fed. Appx. 246 (4th Cir. 2010). Who replaced Pai has nothing to do with Khalil's honest belief that Pai had resigned, that EOIR had directed it to move forward with Pai's replacement, or that Pai's position had changed. Similarly, EEOC has made no effort to establish that Camber's decision to transfer Nance, almost a year after Pai's discharge, demonstrates that age was the real reason for Pai's discharge.

Ultimately, there is no evidence that Khalil, who hired Pai when he was 63-years-old, decided to end Pai's employment less than two years later because of Pai's age. Thus, the court should grant Camber summary judgment on Pai's age discrimination claim.

20

Respectfully submitted this 21st day of May, 2018.

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

By:   */s/ Theresa M. Connolly*
      Theresa M. Connolly (VA Bar 46583)
      12500 Fair Lakes Circle, Suite 300
      Fairfax, VA 22033
      Telephone: 571.522.6108
      Facsimile: 571.281.2858
      tconnolly@constangy.com

      Donald S. Prophete (*pro hac vice*)
      2600 Grand Blvd., Suite 750
      Kansas City, MO 64118
      Telephone: 816.472.6400
      Facsimile: 816.472.6401
      dprophete@constangy.com

      Robert L. Ortbals, Jr. (*pro hac vice*)
      7733 Forsyth Blvd., Suite 1325
      St. Louis, MO 63105
      Telephone: 314.925.7270
      Facsimile: 314.925.7278
      rortbals@constangy.com

      **Attorneys for Defendant**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st of May, 2018, I filed via ECF the foregoing **Defendant's**

**Reply Memorandum in Support of its Motion for Summary Judgment** with the Clerk of Court

using the CM/ECF system, which will send a notification of such filing (NEF) to all ECF counsel

of record in this matter.

<em>/s/ Theresa M. Connolly</em><br>
Theresa M. Connolly (VA Bar 46583)<br>
Constangy, Brooks, Smith & Prophete, LLP<br>
12500 Fair Lakes Circle, Suite 300<br>
Fairfax, Virginia 22033<br>
Telephone: 571.522.6108<br>
Facsimile: 571.281.2858<br>
tconnolly@constangy.com

**Attorney for Defendant**

22

5225221v.1